## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CRIMINAL CASE NO. 05-80089-CR-COHN
### 07-80128-CR-HURLEY

**UNITED STATES OF AMERICA**

**v.**

**RANDY CRAIG LEVINE,**

**Defendant.**

_____/

FILED BY_____ KJZ_____ D.C.

Jul 17, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

### AFFIDAVIT IN THE SUPPORT OF THE REQUEST
### FOR EXTRADITION OF RANDY CRAIG LEVINE

I, Stephanie Evans, being duly sworn, depose and state:

1.      I am a citizen of the United States, residing in the State of Florida.

2.      From September May 2000 to the present, I have been employed as a federal prosecutor with the United States Department of Justice.  Since September 2008, I have been assigned to the United States Attorney's Office for the Southern District of Florida, where I am employed as an Assistant United States Attorney.  As an Assistant United States Attorney for the Southern District of Florida, I am responsible for the investigation, preparation, and prosecution of criminal cases.   During my time as a federal prosecutor, I have become knowledgeable about the criminal laws and procedures of the United States.

3.      The Federal Bureau of Investigation (FBI) conducts investigations of federal crimes.  Based on my training and experience, I have become knowledgeable about criminal activity, particularly violations of the federal statutes regarding mail fraud, wire fraud, perjury, and passport application fraud.

1

4.      In the course of my duties, I have become familiar with the charges and the evidence against RANDY CRAIG LEVINE. As described in further detail below, LEVINE was charged in two separate cases in the Southern District of Florida, which are both titled <u>United States v. Randy Craig Levine,</u> and assigned the case numbers 07-80128-CR-Hurley and 05-80089-CR-Cohn. LEVINE was arrested in Austria with regard to these cases on June 9, 2020, pursuant to an Interpol Red Notice.  On June 12, 2020, the United States submitted a provisional arrest request pursuant to the Extradition Treaty.    The United States seeks extradition of LEVINE from Austria for the prosecution of both these cases.

## <u>SUMMARY OF THE FACTS OF THE CASE</u>

5.      During the course of a several year investigation, the FBI identified Randy Craig LEVINE, a United States citizen residing in Boca Raton, Florida, United States, as an individual who committed mail fraud and wire fraud from approximately 1999 through in or about July 2004. LEVINE operated three internet web sites, www.baseballpicks.net, www.nflfootballpicks.tv and www.nbabasket-ballpicks.net, out of his home at 3700 S. Ocean Blvd, Unit 807, Highland Beach, Florida, 33487.  These web sites purported to provide sports tips to individuals interested in placing bets on sporting events. LEVINE obtained identifying information from individuals who registered on these websites and invited them to open an offshore or Las Vegas casino gambling account which was to be used to place bets on sporting events.

6.      LEVINE often used fake names and different accents while talking to victims on the telephone.  Victims sent money to LEVINE or to LEVINE's aliases, typically by Western Union. Although LEVINE received monies from his victims, LEVINE never opened the promised gambling account. Instead, LEVINE used the victims' monies for LEVINE's personal gain.  When the victims attempted to gain access to their money, or requested a refund, LEVINE strung them

along, providing a myriad of excuses why the money could not be refunded.  LEVINE often requested additional monies for processing fees or closing fees before the victim could withdrawal their balance.  Victims often sent additional monies in an attempt to recover their initial investment, but none of the funds were ever returned to the victims. LEVINE would eventually stop answering victim's telephone calls or responding to their messages.

7.      On July 22, 2004, as part of the criminal investigation of LEVINE, the FBI executed a search warrant at Levine's residence.  Among the items seized from LEVINE's residence was LEVINE's U.S. Passport.  LEVINE was aware that his passport was seized by the FBI, as the passport was listed on the inventory of items seized.  LEVINE was provided a copy of this inventory, which LEVINE had reviewed and signed.  On July 27, 2004, LEVINE applied for a replacement U.S. passport.  LEVINE knowingly made a false statement in this passport application by claiming his current passport had been lost, when in truth and fact, LEVINE knew that his passport had not been lost but had, in fact, been seized by the FBI.  This statement was made under oath to a person authorized to administer oaths.  LEVINE used this fraudulently obtained passport to flee the United States.

## PHYSICAL DESCRIPTION OF LEVINE

8.      LEVINE is a citizen of the United States, born in the United States on March 14, 1967.  He is white male with black hair who stands 5'-8" (172.72 cm) tall. A photograph of LEVINE is attached as Exhibit G.  Fingerprints of LEVINE are attached as Exhibit H.  I have also attached the affidavit of FBI Special Agent William Donaldson, which further details the evidence against LEVINE, and references the photograph and fingerprints of LEVINE as Exhibit F.

## PROCEDURAL HISTORY OF THE CASE

9.      An indictment is a formal accusation or charging document issued by a grand jury. A grand jury consists of 16 to 23 citizens impaneled to review evidence of crimes presented to it by United States law enforcement authorities.  Each member of the grand jury must review the evidence presented and determine whether there is probable cause to believe a crime has been committed, and that it is likely the defendant committed the crime.  The grand jury may return an indictment charging the defendant with a crime when at least 12 grand jurors determine it is more likely than not that the defendant committed the crime.  After an indictment is returned, the court will normally issue a warrant for the arrest of the defendant.  It is the practice in the United States District Court for the Southern District of Florida for the Clerk of the Court to retain the originals of all complaints, indictments, and warrants for arrest.

10.     On May 19, 2005, a federal grand jury sitting in the Southern District of Florida issued a two-count criminal indictment ("Indictment One") in case number 05-80089-CR-Cohn. Indictment One charges Levine with the following offenses:

| | |
|---|---|
| Count 1: | False statement on a passport application in violation of Title 18, United States Code Section 1542, which carries a maximum term of imprisonment of 10 years. |
| Count 2: | Perjury in violation of Title 18, United States Code, Section 1621, which carries a maximum term of imprisonment of 5 years. |

A certified copy of Indictment One is attached as Exhibit A.  On May 19, 2005, a United States Magistrate Judge for the United States District Court for the Southern District of Florida issued a warrant for the arrest of Levine for the offenses charged in Indictment One.  A certified copy of this arrest warrant is attached as Exhibit B.

4

11.     On August 21, 2007, a federal grand jury sitting in the Southern District of Florida issued a 30-count criminal indictment ("Indictment Two") in case no. 07-80128-CR-Hurley. Indictment Two charges LEVINE with the following offenses:

| | |
|---|---|
| Counts 1 - 7: | Wire fraud in violation of Title 18, United States Code Section 1343, which carries a maximum term of imprisonment of 5 years. |
| Counts 8 - 29: | Wire fraud in violation of Title 18, United States Code Section 1343, which carries a maximum term of imprisonment of 20 years. |
| Count 30: | Mail fraud in violation of Title 18, United States Code Section 1341, which carries a maximum term of imprisonment of 20 years. |

A certified copy of Indictment Two is attached as Exhibit C.  On August 21, 2007, a Magistrate Judge for the United States District Court for the Southern District of Florida issued a warrant for the arrest of Levine for the offenses charged in Case No. 07-80129-CR-Hurley (Indictment Two). A certified copy of this arrest warrant is attached as Exhibit D.

12.     Levine is not charged with any gambling offenses in either indictment.

## RELEVANT STATUTES

13.     Count One of Indictment One charges LEVINE with making a false statement on a passport application in violation of Title 18, United States Code Section 1542.  A Defendant is guilty of this crime if: (a) the Defendant made a false statement in an application for a United States passport; (b) the Defendant made the statement intending to get a United States passport; and (c) the Defendant acted knowingly and willfully.   The maximum penalty for a violation of Title 18, United States Code, Section 1542, is a 10 year term of imprisonment, a three year term of supervised release, a $250,000 fine, and a special assessment of $100.  *See* 18 U.S.C. §§ 1542, 3013(a)(2)(A), 3571(b)(3), 3559(a)(3), and 3583 (b)(2).

14.     Count Two of Indictment One charges LEVINE with perjury in violation of Title 18, United States Code Section 1621.  A Defendant is guilty of this crime if: (a) the Defendant took an oath before a competent person duly authorized and empowered to administer oaths that the declarations he had made were true; (b) the Defendant, contrary to said oath, made statements which he then and there did not believe to be true; (c) the false statements related to material matters;  and (d) the Defendant acted willfully and knowingly.  The maximum penalties for a violation of Title 18, United States Code, Section 1621, is a 5 year term of imprisonment, a one year term of supervised release, a $250,000 fine, and a $100 special assessment. *See* 18 U.S.C. §§ 1621, 3013(a)(2)(A), 3571(b)(3), 3559(a)(5), and 3583 (b)(3).

15.     Counts One through Twenty-Nine of Indictment Two charge LEVINE with wire fraud in violation of 18 U.S.C. section 1343. A Defendant is guilty of this crime if: (a) the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises; (b) the false pretenses, representations, or promises were about a material fact; (c) the Defendant acted with the intent to defraud; and (d) the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.  A "scheme or artifice" includes any plan or course of action intended to deceive or cheat others.  In 2002, during the course of the scheme to defraud, the maximum penalty for wire fraud was increased from 5 years to 20 years.  For each of counts 1 through 7 of Indictment Two, the maximum penalties are a 5 year term of imprisonment, a one year term of supervised release, a fine of $250,000 or twice the gross gain or loss from the offense, whichever is greater, and a $100 special assessment.  *See* 18 U.S.C. §§ 1343 (1994), 3013(a)(2)(A), 3571(b)(3), 3559(a)(5), and 3583 (b)(3).  For each of counts 8 though 29 of Indictment Two, the maximum penalties are a 20 year term of imprisonment, a 5 year term of

supervised release, a fine of $250,000 or twice the gross gain or loss from the offense, whichever is greater, and a $100 special assessment. *See* 18 U.S.C. §§ 1343 (2002), 3013(a)(2)(A), 3571(b)(3) and (d), 3559(a)(2), and 3583 (b)(1).

16.     Count 30 of Indictment Two charges LEVINE with mail fraud in violation of Title 18, United States Code Section 1341.  A Defendant is guilty of this crime if: (a) the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises; (b) the false or fraudulent pretenses, representations, or promises were about a material fact; (c) the Defendant intended to defraud someone; and (d) the Defendant used a private or commercial interstate carrier by depositing or causing to be deposited with the carrier something meant to help carry out the scheme to defraud.  The maximum penalty for a violation to Title 18, United States Code, Section 1341 is a 20 year term of imprisonment, a 5 year term of supervised release, a fine of $250,000 or twice the gross gain or loss from the offense, whichever is greater, and a special assessment of $100. *See* 18 U.S.C. §§ 1341, 3013(a)(2)(A), 3571(b)(3) and (d), 3559(a)(2), and 3583 (b)(1).

17.     The statute of limitations for wire fraud, mail fraud, and perjury is five years. *See* 18 U.S.C. § 3282(a).  The statute of limitations for making a false statement on a passport application is 10 years. *See* U.S.C. § 3291.  However, as set forth in Title 18, United States Code, Section 3290, "[n]o statute of limitations shall extend to any person fleeing from justice." As outlined in the affidavit of FBI Special Agent William Donaldson, attached as Exhibit F, LEVINE fled the United States soon after he learned of the government's investigation and has since been a fugitive of justice.  As such, no statute of limitation applies to LEVINE.  Copies of the several statutes of limitation are provided within Exhibit E.

## **CONCLUSION**

18.     The United States requests the extradition of LEVINE for the offenses enumerated in Counts One and Two of Indictment One and Counts One through Thirty of Indictment Two. These offenses are punishable under statutes that (1) were the duly enacted laws of the United States at the time the offenses were committed, (2) were the duly enacted laws of the United States at the time the indictment was filed, and (3) are currently in effect.  These offenses are felony offenses punishable under United States law by more than one year of imprisonment and are punishable under the laws of the Republic of Austria and the United States.  I have attached a copy of the statutes and applicable penalty provisions to this affidavit as Exhibit E.

19.     Special Agent William Donaldson's affidavit was sworn to before a United States Magistrate Judge legally authorized to administer an oath for this purpose. I have thoroughly reviewed Special Agent Donaldson's affidavit and attest this evidence indicates Levine is guilty of the offenses charged in these indictments.

20.     This affidavit is sworn to before a United States Magistrate Judge of the United States District Court, Southern District of Florida, who is a person duly empowered to administer an oath for this purpose.

21.     Pursuant to Article 25 of the Treaty, it is requested that any items relevant to the charged offenses found in LEVINE's possession at the time of his arrest be delivered to the United States, if the extradition is granted.

22.     Should Austrian authorities require supplementary information in order to grant

the extradition, I ask for a reasonable time to provide it in accordance with Article 18 of the

U.S.-Austria Extradition Treaty, as amended.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

STEPHANIE EVANS
ASSISTANT UNITED STATES ATTORNEY


Sworn and Attested to me by Applicant by Telephone (FaceTime) per the requirements

of Fed. R. Crim. P. 4(d) and 4.1 on the 17th day of July, 2020.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

9

# EXHIBIT A

## Indictment One

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **05 ‐ 80089**CR‐COHN

18 USC 1542
18 USC 1621

UNITED STATES OF AMERICA

v.

RANDY CRAIG LEVINE

Defendant.
_____/

FILED by _____ D.C.
MAG. SEC.

**MAY 19 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. W.P.B.

**NOV 2 9 2007**

### INDICTMENT

The Grand Jury charges that:

#### COUNT ONE

On or about July 27, 2004, at West Palm Beach, Palm Beach County, in the Southern District of Florida, the defendant,

RANDY CRAIG LEVINE,

did willfully and knowingly make a false statement in an application for a passport with intent to induce and secure the issuance of a passport under the authority of the United States, for his own use, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, in that the defendant stated in said application that his passport was lost, when in truth and in fact, and as the defendant then and there well knew, his passport was not lost; in violation of Title 18, United States Code, Section 1542.

## COUNT TWO

On or about July 27, 2004, at West Palm Beach, Palm Beach County, in the Southern District of Florida, the defendant,

RANDY CRAIG LEVINE

having duly taken an oath before a competent person duly authorized and empowered to administer oaths, that the written declarations he had made on his application for a United States passport were true, did willfully and knowingly and contrary to said oath state material matters which he then and there did not believe to be true, in that he stated under oath that his passport was lost, when in truth and in fact, and as the defendant then and there well knew, his passport was not lost; in violation of Title 18, United States Code, Section 1621.

A TRUE BILL

_Susan D. French_
FOREPERSON

_[signature]_
MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

_[signature]_
KERRY S. BARON
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES OF AMERICA

vs.

RANDY CRAIG LEVINE,

             **Defendant.**

_____/

**CASE NO. 05-80089 CR-COHN**

**CERTIFICATE OF TRIAL ATTORNEY**

**MAGISTRATE JUDGE SNOW**

**Superseding Case Information:**

**Court Division:** (Select One)

____ Miami    ____ Key West
____ FTL   X   WPB   ____ FTP

New Defendant(s)     Yes _____   No _____
Number of New Defendants   _____
Total number of counts   _____

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:    (Yes or No)     NO
       List language and/or dialect     _____

4.    This case will take    2    days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
        (Check only one)                    (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | X | Petty | |
| II | 6 to 10 days | | Minor | |
| III | 11 to 20 days | | Misdem. | |
| IV | 21 to 60 days | | Felony | X |
| V | 61 days and over | | | |

6.    Has this case been previously filed in this District Court? (Yes or No)    NO
If yes:
Judge: _____     Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?     (Yes or No)    NO
If yes:
Magistrate Case No.    N/A _____
Related Miscellaneous numbers:    N/A _____
Defendant(s) in federal custody as of    N/A _____
Defendant(s) in state custody as of    N/A _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No)     NO

7.    Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003? _____ Yes   X   No

8.    Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _____ Yes   X   No
If yes, was it pending in the Central Region? _____ Yes _____ No

9.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes   X   No

10.    Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003? _____ Yes   X   No

                          _____
                          KERRY S. BARON
                          ASSISTANT UNITED STATES ATTORNEY
                          Admin No.: A5500073

*Penalty Sheet(s) attached

REV 1/14/04

Case 9:05-cr-80089-JIC   Document 1   Entered on FLSD Docket 05/19/2005   Page 4 of 5

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:  **Randy Craig Levine**

Case No.  **05 - 80089** CR-COHN        **MAGISTRATE JUDGE**
                                          **SNOW**

Count #: 1

 18 USC § 1542

 False Statement In Passport Application

\* **Max. Penalty:**    10 Years Imprisonment; $250,000 Fine

Count #: 2

 18 USC § 1621

 Perjury

\***Max. Penalty:**    5 Years Imprisonment; $250,000 Fine

Count #:


\***Max. Penalty:**

Count #:


\***Max. Penalty:**


\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.

Case 9:05-cr-80089-JIC   Document 2   Entered on FLSD Docket 05/19/2005   Page 1 of 2

CR 12 (Rev. 9/82)                          WARRANT FOR ARREST   Kerry S. Baron,   .SA ; S/A Kevin George, FBI

| United States District Court | DISTRICT    Southern District of Florida |
|---|---|

UNITED STATES OF AMERICA

vs. V.

RANDY CRAIG LEVINE

DOCKET NO. 05-80089-Cl-COHN/SNOW    MAGISTRATE CASE NO.

NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED

Randy Craig Levine
UL Bratyskawska
2C/92 Krakow 31-201
Wos. Matopolshie, Polland
DOB: 3-14-67  SSN: 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  Race: W/M

WARRANT ISSUED ON THE BASIS OF:

☐ Order of Court
X  Indictment        ☐ Information     ☐ Complaint

TO:

United States Marshals Service or any other authorized
representative

DISTRICT OF ARREST

CITY

FILED by ___ D.C.
MAG. SEC.

MAY 1 9 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person
before the nearest available magistrate to answer to the charge(s) listed below.

### DESCRIPTION OF CHARGES

FALSE STATEMENT IN PASSPORT APPLICATION

BC
Deputy Clerk
Date  NOV 2 9 2007

| IN VIOLATION OF | UNITED STATES CODE TITLE 18 | SECTION 1542 |
|---|---|---|

BAIL FIXED BY COURT  Pre-trial detention

OTHER CONDITIONS OF RELEASE

ORDERED BY

UN TED STATES MAGISTRATE JUDGE

SIGNATURE (JUDGE/U.S. MAGISTRATE)  James M Hopkins

DATE  5-19-05

CLERK OF COURT

CLARENCE MADDOX

(BY) DEPUTY CLERK

DATE ISSUED  5/19/05

### RETURN

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE EXECUTED | | |

State Court of Record

Case 9:05-cr-80089-JIC     Document 2     Entered on FLSD Docket 05/19/2005     Page 2 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## BOND RECOMMENDATION

DEFENDANT:          Randy Craig Levine

RECOMMENDATION:     Pretrial Detention

KERRY S. BARON
ASSISTANT UNITED STATES ATTORNEY

# EXHIBIT B

**Arrest Warrant for Indictment One**

CR 12 (Rev. 9/82)                    WARRANT FOR ARREST  Kerry S. Baron,   SA ; S/A Kevin George, FBI

| United States District Court | DISTRICT  Southern District of Florida |
|---|---|

UNITED STATES OF AMERICA

v.

RANDY CRAIG LEVINE

DOCKET NO.  05-80084-CR-COHN/SNOW  MAGISTRATE CASE NO.

NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED

Randy Craig Levine
UL Bratyskawska
2C/92 Krakow 31-201
Wos. Matopolshie, Polland
DOB: 3-14-67  SSN: 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   Race: W/M

WARRANT ISSUED ON THE BASIS OF:

☐ Order of Court
X Indictment      ☐ Information      ☐Complaint

DISTRICT OF ARREST

CITY

FILED by _____ D.C.
MAG. SEC.

MAY 1 9 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

TO:

United States Marshals Service or any other authorized
representative

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person
before the nearest available magistrate to answer to the charge(s) listed below.

## DESCRIPTION OF CHARGES

FALSE STATEMENT IN PASSPORT APPLICATION

By _____ Deputy Clerk
Date  NOV 2 9 2007

| IN VIOLATION OF | UNITED STATES CODE TITLE  18 | SECTION  1542 |
|---|---|---|

BAIL FIXED BY COURT
Pre-trial detention

OTHER CONDITIONS OF RELEASE

ORDERED BY

UNITED STATES MAGISTRATE JUDGE

SIGNATURE (JUDGE/U.S. MAGISTRATE)  James M. Hopkins

DATE  5-19-05

CLERK OF COURT

CLARENCE MADDOX

(BY) DEPUTY CLERK

DATE ISSUED  5/19/05

## RETURN

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE EXECUTED | | |

State Court of Record

# EXHIBIT C

**Indictment Two**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80128-Cr-Hurley/Vitunac

18 U.S.C. § 1341
18 U.S.C. § 1343

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RANDY CRAIG LEVINE,
    a/k/a Craig Levine,
    a/k/a Randy Lovirne,

      Defendant.

_____/



FILED by _____ D.C.

AUG 21 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B

NOV 29 2007

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant and material to this indictment:

1. The "spread" is a betting term used to describe the amount of points by which one team is predicted to beat another team.

2. A "pick" is a betting term for wagering advice which may include the projected winner of the contest and/or the projected winner against the "spread."

3. A "handicapper" is a term referring to one who purports to analyze a sporting event and provides a "pick."

4. Baseballpicks.net, nflfootballpicks.tv, and

nbabasketballpicks.net were internet websites which described handicappers expertise in picking winners. These websites offered to give a free sports betting tip to persons who submitted their names, telephone numbers and e-mail addresses at the website.

## COUNTS 1-29

## WIRE FRAUD

5. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

6. From in or about 1999, through in or about July 2004, the exact dates being unknown, at Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**RANDY CRAIG LEVINE,**
**a/k/a Craig Levine,**
**a/k/a Randy Lovirne,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false when made.

## OBJECT OF THE SCHEME TO DEFRAUD

7. It was the object of the scheme and artifice to defraud for the defendant to unlawfully enrich himself by lying to people in order to induce them to open gambling accounts, and then using the monies for personal gain.

2

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

The manner and means by which the defendant sought to accomplish the object of the fraudulent scheme and artifice to defraud included, among others, the following:

8. It was a part of the scheme and artifice to defraud that the defendant operated various sports pick websites, including Baseballpicks.net, nflfootballpicks.tv, and nbabasketballpicks.net.

9. It was a further part of the scheme and artifice to defraud that the defendant, through the website, would describe his and other handicappers expertise in picking winners. The website then offered to give a free sports betting tip to persons who submitted their names, telephone numbers and e-mail addresses at the website.

10. It was a further part of the scheme and artifice to defraud that the persons responding at the website were thereafter contacted, given the free pick and solicited to subscribe to a "picks" service. Moreover, those who responded were also solicited to open what purported to be a gambling account. Persons were told that they would be given free credits in the account in an amount up to or matching their initial deposit. The persons were also told that the deposits into the purported gambling accounts were to be used to make bets on sporting events and to maintain their winnings.

11. It was a further part of the scheme and artifice to

3

defraud that the defendant would instruct that the money be sent to him primarily via Western Union.

12.   It was a further part of the scheme and artifice to defraud that the monies sent as deposits into the gambling accounts were actually kept by the defendant and not deposited into any gambling account belonging to the victim.

13.   It was a further part of the scheme and artifice to defraud that when victims inquired about their gambling accounts, they were presented with fictitious balances.  When a victim wished to close the account, the defendant stalled the victims by, among other things, requiring account closing fees, and using false names and voices.

## ACTS IN EXECUTION OF THE SCHEME TO DEFRAUD

14.   On or about the dates specified as to each count, the defendant, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|------|-----------------------------------|
| 1 | April 9, 2002 | A telephone call from the defendant in Florida, to K.S. in San Jose, California. |
| 2 | April 10, 2002 | A wire transfer of $16,000 from K.S., in San Jose, CA, via K.S.'s bank account at Bank of New York, to the Bank of America account of the defendant in Boca Raton, FL. |
| 3 | April 10, 2002 | A wire transfer of $20,000 from K.S., in San Jose, CA, via K.S.'s bank account at Bank of New York, to the Bank of America account of the defendant in Boca Raton, FL. |
| 4 | April 11, 2002 | A wire transfer of $14,000 from K.S., in San Jose, CA, via K.S.'s bank account at Bank of New York, to the Bank of America account of the defendant in Boca Raton, FL. |
| 5 | April 11, 2002 | A wire transfer of $8,820 from K.S., in San Jose, CA, via K.S.'s bank account at Bank of New York, to the Bank of America account of the defendant in Boca Raton, FL. |
| 6 | April 12, 2002 | A wire transfer of $13,500 from K.S., in San Jose, CA, via K.S.'s bank account at Bank of New York, to the Bank of America account of the defendant in Boca Raton, FL. |
| 7 | July 5, 2002 | The defendant caused an e-mail to be sent from Florida, via arubarefundcenter@yahoo.com, through Yahoo servers outside of Florida, to D.H. in Apopka, FL. |
| 8 | September 14, 2002 | An e-mail was sent by L.T. in Garland TX, to the defendant in Florida, via the defendant's e-mail, info@nflfootballpicks.tv. |

5

| 9  | September 16, 2002 | A wire transfer from L.T. of $600 via Western Union offices in Garland, TX to the defendant in Boca Raton, Florida. |
| 10 | September 16, 2002 | A telephone call from the defendant in Florida, to L.T. in Garland, TX. |
| 11 | September 18, 2002 | A wire transfer from L.T. of $400 via Western Union offices in Garland, TX to the defendant in Boca Raton, FL. |
| 12 | September 18, 2002 | An e-mail from the defendant in Florida to L.T. in Garland, TX via mariofricano@yahoo.com. |
| 13 | September 18, 2002 | A telephone call by the defendant from Florida to L.T. in Garland, TX. |
| 14 | January 22, 2003 | An e-mail was sent by D.D. in Bay City, Michigan, to the defendant in Florida, via the defendant's e-mail, info@nbabasketballpicks.net. |
| 15 | January 30, 2003 | A wire transfer from D.D. of $176 via Western Union offices in Essexville, Michigan to the defendant in Boca Raton, FL. |
| 16 | February 3, 2003 | A telephone call by the defendant from Florida to D.D. in Bay City, Michigan. |
| 17 | February 3, 2003 | A wire transfer from D.D. of $1,401 via Western Union offices in Essexville, Michigan to the defendant in Boca Raton, FL. |
| 18 | February 4, 2003 | A wire transfer from D.D. of $1,500 via Western Union offices in Bay City, Michigan to the defendant in Boca Raton, FL. |
| 19 | February 6, 2003 | A wire transfer from D.D. of $2,675 via Western Union offices in Bay City, Michigan to the defendant in Boca Raton, FL. |

| 20 | February 6, 2003 | A wire transfer from D.D. of $2,881 via Western Union offices in Bay City, Michigan to the defendant in Boca Raton, FL. |
| 21 | February 6, 2003 | A wire transfer from D.D. of $2,881 via Western Union offices in Bay City, Michigan to the defendant in Boca Raton, FL; the subject of this count being different from the previous count. |
| 22 | May 6, 2003 | A telephone call from the defendant in Florida to V.K., in Woodland Hills, CA. |
| 23 | May 7, 2003 | An e-mail to V.K., in Woodland Hills, CA from the defendant in Florida via the defendant's e-mail info@nbabasketballpicks.net. |
| 24 | May 8, 2003 | A wire transfer of $7,000 from V.K., in Woodland Hills, CA, via V.K.'s bank account at Citibank, to the Bank of America account of the defendant in Boca Raton, FL. |
| 25 | April 22, 2004 | A wire transfer from P.K. of $1,200 via Western Union offices in Bridgeton, Missouri to the defendant in Boca Raton, FL. |
| 26 | April 23, 2004 | A wire transfer from P.K. of $1,800 via Western Union offices in Bridgeton, Missouri to the defendant in Boca Raton, FL. |
| 27 | May 4, 2004 | The defendant, in Florida, caused an e-mail to be sent through info@nbabasketballpicks.net, to P.K. in Peru, Illinois. |
| 28 | May 4, 2004 | A wire transfer from P.K. of $918 via Western Union offices in Bridgeton, Missouri to the defendant in Boca Raton, FL. |

7

| 29 | May 14, 2004 | The defendant, in Florida, caused an e-mail to be sent through Miragesportsbook03@Yahoo.com, to P.K. in Peru, Illinois. |
|----|--------------|--------------------------------------------------------------------------------------------------------------------------|

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 30

### MAIL FRAUD

15.   The allegations contained in paragraphs 1 through 4 and 7 through 13 are re-alleged and incorporated by reference as if fully set forth herein.

16.   From in or about 1999, through in or about July 2004, in Palm Beach County, in the Southern District and of Florida and elsewhere, the defendant,

**RANDY CRAIG LEVINE,**
**a/k/a Craig Levine,**
**a/k/a Randy Lovirne,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false when made.

17.   On or about March 19, 2004, the defendant, for the purposes of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and

8

attempting to do so, did knowingly cause to be delivered by private and commercial interstate carrier, notably Federal Express, according to the direction thereon, mail matter addressed to Randy Levine, 3700 S. Ocean Boulevard, #807, Highland Beach, FL 33487, containing five $500.00 Western Union/Seven-Eleven money orders payable to Pacific Oriental.

All in violation of Title 18, United States Code, Sections 1341 and 2.

A true bill.

Foreperson

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

KERRY S. BARON
ASSISTANT UNITED STATES ATTORNEY

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

RANDY CRAIG LEVINE,
    a/k/a Craig Levine,
    a/k/a Randy Lovirne,

              Defendant.

CASE NO. *07-80128 Cr-Hurley/Vitunac*

**CERTIFICATE OF TRIAL ATTORNEY***

Superseding Case Information:

New Defendant(s)          Yes _____  No _____
Number of New Defendants
Total number of counts

**Court Division:** (Select One)

| | | |
|---|---|---|
| ___ Miami | _X_ Key West | |
| ___ FTL | ___ WPB | ___ FTP |

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:    (Yes or No)    _NO_
    List language and/or dialect _____

4.    This case will take   _5_   days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
    (Check only one)                   (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | _X_ | Petty | ___ |
| II | 6 to 10 days | ___ | Minor | ___ |
| III | 11 to 20 days | ___ | Misdem. | ___ |
| IV | 21 to 60 days | ___ | Felony | _X_ |
| V | 61 days and over | ___ | | |

6.    Has this case been previously filed in this District Court? (Yes or No)  _NO_
    If yes:
    Judge: _____    Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    (Yes or No)  _NO_
    If yes:
    Magistrate Case No.  _N/A_
    Related Miscellaneous numbers:  _05-80089-CR-Cohn_
    Defendant(s) in federal custody as of  _N/A_
    Defendant(s) in state custody as of  _N/A_

    Rule 20 from the _____  District of _____

    Is this a potential death penalty case? (Yes or No)    _NO_

7.    Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003? _____ Yes  _X_ No

8.    Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 1999? _____ Yes  _X_ No
    If yes, was it pending in the Central Region? _____ Yes _____ No

9.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _X_ Yes _____ No

10.   Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003? _____ Yes _X_ No

                              KERRY S. BARON
                              ASSISTANT UNITED STATES ATTORNEY
                              Admin No.:  A5500073

*Penalty Sheet(s) attached

REV.1/14/04

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:   **RANDY CRAIG LEVINE,**
**a/k/a Craig Levine**
**a/k/a Randy Lovirne**

Case No: _07-80128-Cr-Hurley/Vitunac_

Counts #: 1 - 7

18 USC § 1343

Wire Fraud

**\* Max. Penalty:**   5 Years Imprisonment; $250,000.00 Fine

Counts #: 8 - 29

18 USC § 1343

Wire Fraud

**\*Max. Penalty:**   20 Years Imprisonment; $250,000.00 Fine

Count #: 30

18 USC § 1341

Mail Fraud

**\*Max. Penalty:**   20 Years Imprisonment; $250,000.00 Fine

Count #:




**\*Max. Penalty:**


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:          RANDY CRAIG LEVINE,
                    a/k/a Craig Levine
                    a/k/a Randy Lovirne

RECOMMENDATION:     Pretrial Detention

KERRY S. BARON
ASSISTANT UNITED STATES ATTORNEY

Case 0:07-cr-80128-DTKH   Document 2 *SEALED*   Entered on FLSD Docket 08/21/2007   Page 1 of 1

**WARRANT FOR ARREST**   Kerry S. Baron, AUSA ; S/A Sean McDermott, FBI

**United States District Court**

District of Southern District of Florida

UNITED STATES OF AMERICA

v.

RANDY CRAIG LEVINE,
a/k/a Craig Levine
a/k/a Randy Lovirne

| DOCKET NO. | MAGISTRATE CASE NO. |
|---|---|
| 07-80128-Cr-Hurley NITUNAC | |

NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED

Randy Craig Levine
UL Bratyskawska
2C/92 Krakow 31-201
Wos. Matopolshie, Polland
DOB: 3-14-67    SSN: 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    Race: W/M

WARRANT ISSUED ON THE BASIS OF:

☐ Order of Court
X Indictment    ☐ Information    ☐ Complaint

TO:

United States Marshals Service or any other authorized
representative

DISTRICT OF ARREST

CITY

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person
before the nearest available magistrate to answer to the charge(s) listed below.

DESCRIPTION OF CHARGES

WIRE FRAUD
MAIL FRAUD

FILED by _____ D.C.

AUG 21 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B

NOV 29 2007

| IN VIOLATION OF | UNITED STATES CODE TITLE 18 | SECTION 1341 and 1343 |
|---|---|---|

BAIL FIXED BY COURT   no Gond

OTHER CONDITIONS OF RELEASE

ORDERED BY

UNITED STATES MAGISTRATE JUDGE

SIGNATURE (JUDGE/U.S. MAGISTRATE)

DATE   8-20-07

CLERK OF COURT

CLARENCE MADDOX

(BY) DEPUTY CLERK

DATE ISSUED   8-21-07

**RETURN**

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE EXECUTED | | |

[1]United States Judge or Judge of a State Court of Record.

# EXHIBIT D

**Arrest Warrant for Indictment Two**

Case 9:07-cr-80128-DTKH   Document 2   SEALED   Entered on FLSD Docket 08/21/2007   Page 1 of 1

**WARRANT FOR ARREST**   Kerry S. Baron, AUSA ; S/A Sean McDermott, FBI

# United States District Court

Southern District of Florida

UNITED STATES OF AMERICA

vs.

RANDY CRAIG LEVINE,
a/k/a Craig Levine
a/k/a Randy Lovirne

| DOCKET NO. | MAGISTRATE CASE NO. |
|---|---|
| 07-80128-Cr-Hurley | NITUNAC |

NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED

Randy Craig Levine
UL Bratyskawska
2C/92 Krakow 31-201
Wos. Matopolshie, Polland
DOB: 3-14-67   SSN: 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   Race: W/M

**WARRANT ISSUED ON THE BASIS OF:**

☐ Order of Court
X Indictment      ☐ Information      ☐ Complaint

TO:

United States Marshals Service or any other authorized
representative

DISTRICT OF ARREST

CITY

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person
before the nearest available magistrate to answer to the charge(s) listed below.

**DESCRIPTION OF CHARGES**

WIRE FRAUD
MAIL FRAUD

FILED by _____ D.C.

AUG 21 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B

NOV 2 9 2007

| IN VIOLATION OF | UNITED STATES CODE TITLE | SECTION |
|---|---|---|
| | 18 | 1341 and 1343 |

BAIL FIXED BY COURT   no Bond

OTHER CONDITIONS OF RELEASE

| ORDERED BY | SIGNATURE (JUDGE/U.S. MAGISTRATE) | DATE 8-20-07 |
|---|---|---|
| UNITED STATES MAGISTRATE JUDGE | | |
| CLERK OF COURT | (BY) DEPUTY CLERK | DATE ISSUED 8-21-07 |
| CLARENCE MADDOX | | |

**RETURN**

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE EXECUTED | | |

[1] United States Judge or Judge of a State Court of Record.

# EXHIBIT E

**Relevant Statutes**

**Title 18, United States Code, Section 1341 (2002)**

**Frauds and swindles**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**Title 18, United States Code, Section 1341 (2008—Current Version)**

**Frauds and swindles**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**Title 18, United States Code, Section 1343 (1994)**

**Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,

transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**Title 18, United States Code, Section 1343 (2002)**

**Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**Title 18, United States Code Section 1343 (2008—Current Version)**

**Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**Title 18, United States Code Section 1542 (2002—Current Version)**

**False statement in application and use of passport**

Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; or

Whoever willfully and knowingly uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement--

Shall be fined under this title, imprisoned not more than 25 years (if the offense was committed to facilitate an act of international terrorism (as defined in section 2331 of this title)), 20 years (if the

offense was committed to facilitate a drug trafficking crime (as defined in section 929(a) of this title)), 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), or 15 years (in the case of any other offense), or both.

## Title 18, United States Code, Section 1621 (1994—Current Version)

### Perjury generally

Whoever--

**(1)** having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

**(2)** in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

## Title 18, United States Code, Section 3013 (1996—Current Version)

### Special assessment on convicted persons

**(a)** The court shall assess on any person convicted of an offense against the United States--

    **(1)** in the case of an infraction or a misdemeanor--

        **(A)** if the defendant is an individual--

            **(i)** the amount of $5 in the case of an infraction or a class C misdemeanor;

            **(ii)** the amount of $10 in the case of a class B misdemeanor; and

            **(iii)** the amount of $25 in the case of a class A misdemeanor; and

        **(B)** if the defendant is a person other than an individual--

            **(i)** the amount of $25 in the case of an infraction or a class C misdemeanor;

            **(ii)** the amount of $50 in the case of a class B misdemeanor; and

            **(iii)** the amount of $125 in the case of a class A misdemeanor;

    **(2)** in the case of a felony--

        **(A)** the amount of $100 if the defendant is an individual; and

        **(B)** the amount of $400 if the defendant is a person other than an individual.

**(b)** Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.

**(c)** The obligation to pay an assessment ceases five years after the date of the judgment. This subsection shall apply to all assessments irrespective of the date of imposition.

**(d)** For the purposes of this section, an offense under section 13 of this title is an offense against the United States.

### Title 18, United States Code, Section 3282(a) (2003—Current Version)

**Offenses not capital**

**(a) In general.**--Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

### Title 18, United States Code, Section 3290 (1948—Current Version)

**Fugitives from justice**

No statute of limitations shall extend to any person fleeing from justice.

### Title 18, United States Code, Section § 3291 (1994—Current Version)

**Nationality, citizenship and passports**

No person shall be prosecuted, tried, or punished for violation of any provision of sections 1423 to 1428, inclusive, of chapter 69 and sections 1541 to 1544, inclusive, of chapter 75 of title 18 of the United States Code, or for conspiracy to violate any of such sections, unless the indictment is found or the information is instituted within ten years after the commission of the offense.

### Title 18, United States Code, Sections 3559(a) & (b) (2003)

**Sentencing classification of offenses**

**(a) Classification.**--An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is--

    **(1)** life imprisonment, or if the maximum penalty is death, as a Class A felony;

    **(2)** twenty-five years or more, as a Class B felony;

    **(3)** less than twenty-five years but ten or more years, as a Class C felony;

    **(4)** less than ten years but five or more years, as a Class D felony;

    **(5)** less than five years but more than one year, as a Class E felony;

    **(6)** one year or less but more than six months, as a Class A misdemeanor;

    **(7)** six months or less but more than thirty days, as a Class B misdemeanor;

(**8**) thirty days or less but more than five days, as a Class C misdemeanor; or

(**9**) five days or less, or if no imprisonment is authorized, as an infraction.

(**b**) **Effect of classification.**--Except as provided in subsection (c), an offense classified under subsection (a) carries all the incidents assigned to the applicable letter designation, except that the maximum term of imprisonment is the term authorized by the law describing the offense.

### Title 18, United States Code, Sections 3559(a) & (b) (2006—Current Version)

#### Sentencing classification of offenses

(**a**) **Classification.**--An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is--

(**1**) life imprisonment, or if the maximum penalty is death, as a Class A felony;

(**2**) twenty-five years or more, as a Class B felony;

(**3**) less than twenty-five years but ten or more years, as a Class C felony;

(**4**) less than ten years but five or more years, as a Class D felony;

(**5**) less than five years but more than one year, as a Class E felony;

(**6**) one year or less but more than six months, as a Class A misdemeanor;

(**7**) six months or less but more than thirty days, as a Class B misdemeanor;

(**8**) thirty days or less but more than five days, as a Class C misdemeanor; or

(**9**) five days or less, or if no imprisonment is authorized, as an infraction.

(**b**) **Effect of classification.**--Except as provided in subsection (c), an offense classified under subsection (a) carries all the incidents assigned to the applicable letter designation, except that the maximum term of imprisonment is the term authorized by the law describing the offense.

### Title 18, United States Code, Section § 3571 (1987—Current Version)

#### Sentence of fine

(**a**) **In general.**--A defendant who has been found guilty of an offense may be sentenced to pay a fine.

(**b**) **Fines for individuals.**--Except as provided in subsection (e) of this section, an individual who has been found guilty of an offense may be fined not more than the greatest of--

(**1**) the amount specified in the law setting forth the offense;

(**2**) the applicable amount under subsection (d) of this section;

(**3**) for a felony, not more than $250,000;

(**4**) for a misdemeanor resulting in death, not more than $250,000;

(**5**) for a Class A misdemeanor that does not result in death, not more than $100,000;

(**6**) for a Class B or C misdemeanor that does not result in death, not more than $5,000; or

(**7**) for an infraction, not more than $5,000.

(**c**) **Fines for organizations.**--Except as provided in subsection (e) of this section, an organization that has been found guilty of an offense may be fined not more than the greatest of--

(**1**) the amount specified in the law setting forth the offense;

(**2**) the applicable amount under subsection (d) of this section;

(**3**) for a felony, not more than $500,000;

(**4**) for a misdemeanor resulting in death, not more than $500,000;

(**5**) for a Class A misdemeanor that does not result in death, not more than $200,000;

(**6**) for a Class B or C misdemeanor that does not result in death, not more than $10,000; and

(**7**) for an infraction, not more than $10,000.

(**d**) **Alternative fine based on gain or loss.**--If any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process.

(**e**) **Special rule for lower fine specified in substantive provision.**--If a law setting forth an offense specifies no fine or a fine that is lower than the fine otherwise applicable under this section and such law, by specific reference, exempts the offense from the applicability of the fine otherwise applicable under this section, the defendant may not be fined more than the amount specified in the law setting forth the offense.

### Title 18, United States Code, Sections 3583 (a) & (b) (2001)

### Inclusion of a term of supervised release after imprisonment

(**a**) **In general.**--The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute or if the defendant has been convicted for the first time of a domestic violence crime as defined in section 3561(b).

(**b**) **Authorized terms of supervised release.**--Except as otherwise provided, the authorized terms of supervised release are--

(**1**) for a Class A or Class B felony, not more than five years;

(**2**) for a Class C or Class D felony, not more than three years; and

(**3**) for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year.

**Title 18, United States Code, Section 3583 (a) & (b) (2003)**

**Inclusion of a term of supervised release after imprisonment**

**(a) In general.**--The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute or if the defendant has been convicted for the first time of a domestic violence crime as defined in section 3561(b).

**(b) Authorized terms of supervised release.**--Except as otherwise provided, the authorized terms of supervised release are--

    **(1)** for a Class A or Class B felony, not more than five years;

    **(2)** for a Class C or Class D felony, not more than three years; and

    **(3)** for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year.

# EXHIBIT F

**Affidavit of FBI Special Agent William Donaldson**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CRIMINAL CASE NO. <u>05-80089-CR-COHN</u>**
**<u>07-80128-CR-HURLEY</u>**

**UNITED STATES OF AMERICA**

**v.**

**RANDY CRAIG LEVINE,**

**Defendant.**
_____/

<u>**AFFIDAVIT IN THE SUPPORT OF THE REQUEST FOR**
**EXTRADITION OF RANDY CRAIG LEVINE**</u>

I, William Donaldson, being first duly sworn, state the following:

1.      I am a citizen of the United States, residing in the state of Florida.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI).

3.      The FBI conducts investigations involving crimes against the United States. Based on my training and experience, I have become knowledgeable about criminal activity, particularly violations of the federal statutes regarding mail fraud and wire fraud.

4.      My duties as an FBI agent include the investigation of Randy Craig Levine in the cases of <u>United States v. Randy Craig Levine</u>, case numbers 07-80128-CR-Hurley and 05-80089-CR- Cohn.  As one of the case agents of this investigation, I am familiar with the facts of the investigation involving the criminal activities of Levine, formerly residing in Boca Raton, Florida, United States, born in the United States on March 14, 1967.  This affidavit is based upon my personal knowledge, a review of documents and other evidence obtained during the course of the investigation to date, interviews of witnesses, information provided by other law enforcement officers and foreign governments, and information obtained from public records.

**Summary of the Investigation**

5.      The database records of .tv Corporation and Whois.Net, provide domain name registration information.  These databases show that Levine was the registrant of three (3) internet web sites, www.baseballpicks.net, www.nflfootballpicks.tv, and www.nbabasketballpicks.net, which purported to provide sports tips to individuals interested in placing bets on sporting events. These web sites were hosted by WebCast 1, Inc., located in Boca Raton, Florida.  Bank of America records show Levine made payments to WebCast 1 from his personal account, number 3432633262. WebCast 1 owner Frederick Waters confirmed WebCast 1 hosted these web sites for Levine, doing business as Pacific Oriental.

6.      Levine operated these web sites out of his home at 3700 South Ocean Boulevard, Unit 807, Highland Beach, Florida, 33487.  This address is also known as 3700 South Ocean Boulevard, Unit 807, Boca Raton, Florida.  A search executed at this location by the FBI yielded binders containing leads generated by visitors who registered at these web sites.  These leads provided identifying information for individuals interested in obtaining sports tips.  These individuals were then contacted by Levine and solicited to send money to open an offshore or Las Vegas casino gambling account to be used to place bets on sporting events.

7.      Although Levine received monies from his victims, the gambling accounts were never opened. Levine instead used these monies for personal gain.  In this manner, Levine defrauded more than 100 victims out of more than $500,000.  When the victims attempted to gain access to their money, or requested a refund, Levine strung them along, providing excuses as to why the money could not be returned. Levine often requested additional money for processing fees or closing fees before the victims could withdrawal their balances.  Victims often complied and sent Levine additional money in an attempt to recover their initial investment; however, the funds

were never returned to the victims.  Levine eventually stopped answering and/or responding to these victims' telephone calls and messages.

8.      Levine often used fictitious names and different accents on the telephone while talking to victims.  Notebooks discovered during a search executed by the FBI at Levine's residence show aliases recorded next to client information.  These aliases include the names "Bob W.", "Mario" and "Rocco."

9.      While Levine typically purported to operate out of Las Vegas, Nevada, he instructed victims to send monies to Boca Raton, Florida.  Levine instructed victims to send money to himself, an alias, or an accomplice.  Money was typically sent by Western Union and picked up at over 25 different locations in the Boca Raton, Florida area.  Levine also received packages containing checks or cash sent from victims at his residence or at rented mailboxes.

10.     According to individuals who worked for Levine, Levine obtained fake driver's licenses.  Levine had to use this false identification to pick up money from Western Union because Western Union did not allow Levine to receive money due to the volume of complaints filed against him.

11.     Levine also instructed accomplices to pick up money from Western Union for him. The accomplice then delivered the money to Levine and Levine paid the accomplice a percentage for this assistance.  When a victim wrote a check made payable to an accomplice, the accomplice endorsed the check and subsequently signed it over to Levine.

12.     Two cooperating sources, referred to as "CS1" and "CS2", assisted during this investigation.  CS1 is a gambler and has knowledge of Levine and the operation of his business. CS2 is a business associate of CS1, is familiar with the business of providing sports tips, and is able to talk knowledgeably on the subject.

13.    On March 2, 2004, under the direction of the FBI, CS1 met with Levine to discuss the possibility of working together.  During the meeting, which was consensually recorded, Levine stated he "is not a straight guy…I'm like a hustler…this is a tough business…you take everybody." Levine was further recorded stating the following:

a.    "I use the 702 number…they think I'm in Vegas, all the money comes here, I have someone here that can pull anything, we change names week to week, we have different IDs, he's a Russian guy…I pay him 4 - 5%...he's here in Boca."

b.    "I even have a CD that has all the casino games going on so if I close my office I have it playing it sounds like I'm right in the casino."

c.    Levine stated he operates, "…in my Toscana condo…I do my own thing, I'm timid to let anybody in my house; why have an office when you can wake up and be there…"  Levine's above described residence is a building called Toscana North.

d.    "…my stuff's just all Internet, when I get done with it I roast it…I don't want to give you names I've pinged on for 4 weeks…you're already starting in with anger, it's very difficult to overcome a guy that's beat up for 50 grand."  According to another Special Agent of the FBI who has been investigating telemarketing fraud for ten years, the term "pinged on" refers to the act of constantly calling a victim to get as much money as possible.  The term "roast," as used here, refers to having successfully "pinged" a victim to the point that there is nothing left which can be obtained.

e.    "…they can send it anywhere, I got guys that'll send the money to Florida, they're so stupid.  We could set it up so I could be your sportsbook, …we'll make it

sound legit but, you know, we'll make em lose, cause that's the whole objective right?  I don't have a lot of guys right now. I roasted a lot of them in February and it's like, you know, rebuilding week."

f.        "he uses fake IDs, he has nine locations…he can generate New Jersey license, Florida license…lithogram, he's got those now so he can make Florida licenses now...I have a whole other identity, he set it up for me, I don't even have it in my name."

g.        "I can have it wired to a corporate account…the corporation is a Florida corp but it's not in any name, it's in the corporate name…but the key is not to have one corp, have 5 or 6, moving the stuff all over the place."

14.      On or about March 15, 2004, CS1 provided Levine with the fictitious name and telephone number of an individual who was purported to be a gambler and could be contacted by Levine to entice this individual to utilize his services.  A telephone number of (478) 284-8234 was provided and CS2 assumed the identity of the fictitious name given to Levine.  Between March 15, 2004 and March 19, 2004, CS2 had telephone conversations with a man who contacted CS2 on the number (478) 284-8234 and identified himself as "TJ".  During these telephone conversations, which were consensually recorded, TJ convinced CS2 to send $2,500 to Levine to open an account that would allow CS2 to place bets on sports events. CS2 agreed to send $2,500 in money orders using Federal Express.  TJ told CS2 to have the money orders payable to Pacific Oriental and to send them to Randy Levine at 3700 South Ocean Boulevard, #807, Highland Beach, Florida 33487.  On March 19, 2004, two Special Agents of the FBI purchased $2,500 in money orders, made them out to Pacific Oriental, and mailed them via Federal Express to Randy Levine at 3700 South Ocean Boulevard, Highland Beach, Florida 33487.

15.     Levine owned Pacific Oriental, Inc., a Florida-based corporation registered in July 2001.  Florida Department of State records show Pacific Oriental, Inc. is located at 3700 South Ocean Boulevard, #807, Boca Raton, Florida 33487.  Levine is listed as president, sole officer, and registered agent.

16.     Bank of America records show Randy Levine opened account number 5491244360 using the name Pacific Oriental, Inc. on June 10, 2003.  The sole signatory on the account is Levine.  Bank of America records show the $2,500 in money orders previously mailed by FBI Special Agents were deposited into this account.  No gambling account was ever opened and Levine used the monies he received for personal gain.

17.     Victims have identified at least four persons working with Levine.  In addition to Levine and his aliases, victims were directed to send monies to Lisa Bitter, Julio Conegundes, Daniel Filiatreault, and Arturas Saladzius.  Each of these persons resides in the Boca Raton, Florida area.  A review of bank and Western Union records revealed that the persons picking up the money identified themselves using Florida driver's license numbers, telephone numbers, and home addresses.  This identifying information corroborates the above names provided by the victims.

18.     Western Union records show between April 23, 1999 and March 25, 2004, Levine received $589,836.57 from 126 individuals at 17 Western Union locations in 855 transactions.  Levine has also used the aliases Craig Levine, Ran Levine, Randy Craig Levine, and Randy Lovirne.

19.     Western Union records show between October 7, 2000 and April 5, 2003, Lisa Michelle Bitter received $48,584.65 from 36 individuals at 15 Western Union locations in 68 transactions.  Bank records show Bitter also received checks in her name from victims, endorsed

the checks, and signed them over to Levine.  The checks were then deposited into Levine's personal account at Bank of America, account number 3432633262.

20.    Western Union records show between December 3, 2001 and December 20, 2002, Julio Conegundes received $105,568.63 from 56 individuals at 16 Western Union locations in 144 transactions.  Bank records show Conegundes received checks in his name from victims, endorsed the checks, and signed them over to Levine.  The checks were then deposited into Levine's personal account at Bank of America, account number 3432633262.

21.    Western Union records show between March 4, 2003 and November 12, 2003, Daniel Filiatreault received $48,390 from 41 individuals at 8 different locations in 138 transactions.

22.    Western Union records show between September 22, 2002 and March 7, 2004, Arturas Saladzius received $25,730 from nine (9) individuals at seven (7) different locations in 21 transactions.

23.    A representative from the Financial Department at Western Union advised that Western Union will not allow Randy Levine, who resides at 3700 South Ocean Boulevard, Highland Beach, Florida 33487, to be the recipient of any funds originating with a credit card. Western Union is financially responsible for refunds from individuals who use credit cards to initiate Western Union transactions if these individuals later report the transactions as fraudulent to their credit card companies.   As a result, Levine has instructed numerous individuals to purposely use a slightly different spelling of Levine's last name, such as Levigne or Lavine, when using a credit card. A number of victims have corroborated this by reporting they were instructed to purposely misspell Levine's last name when using their credit cards.  The victims include Chieu Yang of Upland, California and Amit Patel of Houston, Texas.

## Summary of Sample Victim Complaints

24.     A review of records from the Federal Trade Commission, Consumer Sentinel database, as well as reports filed with the FBI, the Internet Fraud Complaint Center, and Western Union has resulted in approximately 38 complaints relating to Levine and his web sites.

25.     Victims reported registering their personal identification information on the websites www.baseballpicks.net, www.nflfootballpicks.tv, and www.nbabasketballpicks.net before being solicited to send money to Levine.

26.     Telephone records show Levine is the subscriber for the telephone numbers listed on these web sites, (800) 459-4389 and (888) 922-3422. Victims also report using these telephone numbers to contact Levine.

27.     Chieu Yang of Upland, California left his contact information on the website www.nbabasketballpicks.net to get a free pick on a basketball game.  A man named "Bobby" contacted Yang by telephone and gave him a free pick.  The game for the free pick was a winner, and the next morning Bobby called Yang again and wanted $400 for a one-year subscription of picks.  On February 19, 2004, Yang sent $425 via Western Union using his credit card to Randy Levigne in Boca Raton, Florida as instructed by Bobby.  Yang was instructed to spell the last name as "Levine" when using cash to complete the Western Union transaction but to spell the last name as "Levigne" when using a credit card to complete the transaction.  Bobby then convinced Yang to open an internet casino account with him.  Bobby told Yang that the more money with which he opened the account, the larger the bonus to be deposited into Yang's account.  Yang sent a total of $1,275 to Randy Levine of Boca Raton, Florida using Western Union.  After Yang sent money to Levine, Bobby did not take Yang's calls again.  Yang contacted Bobby using the telephone number (800) 459-4389.

28.     Jon Barton of Penngrove, California called the telephone number on the web site www.nflfootballpicks.tv while looking for a place to bet on the NFL Super Bowl. A short time later, Barton received a telephone call from "Bobby Williams" offering Barton a place to make bets.  Williams told Barton he would get a bonus for making a $1,000 deposit, thereby having a total of $2,475 in the account with which to bet.  Williams also told Barton that Barton could withdraw 75 percent of his money after the first week.  As instructed by Williams, Barton sent $2,000 through Western Union to Randy Levine in Boca Raton, Florida on January 18, 2004. Western Union records show Levine provided Florida driver's license number L150723670940 when he picked up this money on January 18, 2004.  Florida Department of Motor Vehicle (DMV) records show this driver's license number belongs to Levine.  Barton made two bets with Williams on two football games, but after Barton won both games, Williams did not take Barton's telephone calls.  Barton has not been able to get any of his money back. One of the telephone numbers Barton used to contact Williams was (800) 459-4389.

29.     On approximately January 16, 2004, Amit Patel of Houston, Texas was contacted by a man named "Bobby", who convinced Patel to open a gambling account.  Patel was to receive a password to access the account to place bets over the Internet. Patel sent $2,000 through Western Union to Randy Levine in Boca Raton, Florida to open the account.  Patel told Bobby he would receive an additional $1,000 bonus to be deposited into the account so Patel could recover his original investment right away. Bobby instructed Patel to spell the name "Lavine" if using a credit card to send the money and spell the name "Levine" if sending cash.  After Patel sent the initial $2,000, he was again contacted by Bobby, who told Patel he needed $500 more to open the account.  Patel sent the additional $500 to Randy Levine in Boca Raton, Florida.  After Patel sent

the money to Levine, Bobby did not answer Patel's telephone calls.  Western Union records show Levine provided Florida driver's license number Ll50723670940 when he picked up the money.

30.     Gary Schreiber of Antelope, California entered his identifying information on an internet website and received a telephone call from a man named "Mario."  Mario offered to set up an account for Schreiber that would allow Schreiber to make bets on football games.  Mario also told Schreiber that Schreiber would receive a bonus in the account after the money was received.  Schreiber sent approximately $5,500 to Randy Levine in Boca Raton, Florida using Western Union over a one week period beginning on or around October 27, 2003.  After Schreiber sent this money to Levine, Mario did not answer Schreiber's subsequent telephone calls.  Schreiber contacted Mario using the telephone number (800) 459-4389.

31.     Douglas Cornelius of Alabama, New York was contacted by "Mario Fricano". Fricano was to set up an account for Cornelius to bet on sporting events. During a one week period, beginning on or around November 7, 2003, Cornelius sent $1,550 through Western Union to Randy Levine of Boca Raton, Florida, as instructed by Fricano.  After Cornelius sent the money to Levine, Cornelius tried contacting Fricano numerous times at the number given to him, (800) 459-4389; however, Fricano did not answer Cornelius' telephone calls.

32.     Roger House of Calabasas, California received a telephone call from "Rocco", a person who claimed to work for Mario Fricano and was associated with the web site www.nflfootballpicks.tv.  House was given tips on games and was instructed to "take care of" Rocco if he won.  House explained this meant paying 25 percent of the winnings for providing the tip.  Rocco convinced House to open a gambling account and instructed House to send the money through Western Union to Dan Filiatreault.  On October 5, 2003, House sent a total of $1,375 to Dan Filiatreault in Boca Raton, Florida.  After the money was sent to open the account, House

tried repeatedly to contact Rocco at the telephone number given, (800) 459-4389, but Rocco did not answer his telephone calls.  House has neither received any of his money back nor has he been able to access his account.  Western Union records show Dan Filiatreault picked up these funds in Boca Raton, Florida.

33.     David Dittenber of Bay City, Michigan sent over $48,000 to Randy Levine in Boca Raton, Florida over the course of a three week period beginning February 3, 2004.  Dittenber was contacted by a man named "Mario Fricano", who presented himself as a Las Vegas handicapper. Handicapper is a term used to describe a person who sets odds for sporting events. Fricano further claimed that he operated two websites, www.nflfootballpicks.tv and www.baseballpicks.net. Fricano convinced Dittenber to open an account that would allow Dittenber to legally bet on sports games.  Dittenber was told by Fricano he would be able to make withdrawals with no restrictions but would have to claim his winnings. Dittenber contacted Fricano at (800) 459-4389 and attempted to get his money back. Fricano claimed additional funds were needed in order to get his initial investment back.  Dittenber was told several times his money had to be moved from one account to another in order to meet the requirements to make a withdrawal.  Each time the money was moved to another account, Fricano requested additional funds and they were sent by Dittenber to Randy Levine.  Dittenber never received any of his money back.  Western Union records show this money was picked up by Randy Levine in Boca Raton, Florida.

**Passport Fraud**

34.     On or about July 27, 2004, Levine knowingly made a false statement in a passport application by claiming his current passport had been lost. This statement was made under oath to a person authorized to administer oaths.  Levine stated under oath that his passport was lost, when in truth and in fact, and as Levine knew, this passport was not lost.  Levine was aware the FBI had

seized this passport during a search of his residence on July 22, 2004. This passport was included on the inventory of items seized during the search warrant. Levine was provided with a copy of the search warrant inventory, reviewed it and signed a copy. Therefore, Levine knew his passport was not stolen because it was seized by the FBI.

35.     On January 5, 2005, Levine, his attorney, the Assistant United States Attorney, and two FBI Special Agents had a meeting. During the meeting, the United States revealed its case against Levine, as well as some of the evidence to be used. The United States discussed the passport Levine had obtained following the FBI search of his residence. After the discussion, there was an agreement for Levine to surrender this passport. Instead, Levine used this fraudulently obtained passport to flee the United States on January 6, 2005.

### The Fugitive Investigation

36.     Levine was arrested in Poland pursuant to an Interpol Red Notice in February 2008. However, complications arose because Levine had obtained his Polish citizenship on January 21, 2008. This resulted in a lengthy legal process in the Polish court system to determine if a Polish citizen could be extradited to the United States. In October 2011, Polish authorities issued a summons for Levine after the Polish Constitutional Court ruled to extradite him to the United States. Levine failed to appear and a warrant was issued for his arrest. Levine's defense attorney advised the Polish prosecutor that he believed Levine had left Poland. An Assistant United States Attorney and an FBI Special Agent met with Levine's defense attorney to discuss arrangements for Levine's self-surrender but the self-surrender never happened.

37.     On September 22, 2017, the United States Marshals Service received an anonymous tip via email indicating that Levine was living in Tbilisi, Georgia under the alias Viktor Lapin Borisovich (Lapin) and was committing international wire fraud on victims in Tbilisi, Georgia.

The tip also indicated that Levine was traveling using a Russian Passport under the Lapin alias with a date of birth of December 12, 1966 and a place of birth of "Grozniy Chechen" [*sic*]. Information was also provided indicating that Levine had a person working for or with him in Guatemala.  Additionally, it was believed that Levine would be traveling to Guatemala City, Guatemala from Tbilisi, Georgia on September 23, 2017.

38.     From September 2017 until November 2019, U.S. authorities worked through INTERPOL with Guatemala to arrest LEVINE when he traveled there using various aliases. However, these efforts were not successful.

39.     On May 27, 2020, the FBI Legal Attaché in Vienna, Austria contacted the undersigned FBI Agent and indicated that the Austrian Bundeskriminalamt Fugitive Active Search Team (BK FAST) had a fair level of certainty on a facial recognition match between Levine and someone who opened a bank account in Austria in March using a Mexican passport.  The name on the passport was Alexander Martinez Lavrov with a date of birth of February 21, 1967.  BK FAST requested additional photographs and fingerprints for Levine, which were subsequently provided by the undersigned FBI Agent along with copies of Levine's indictments and arrest warrants.

40.     The new alias was provided to INTERPOL Washington and an updated Red Notice was issued on June 5, 2020.  On June 9, 2020, BK FAST arrested Randy Levine in Graz, Austria. According to an FBI Special Agent working with the FBI Legal Attaché in Austria, Levine possessed a passport with a new alias at the time of his arrest and later admitted to the BK FAST that his real name was Randy Levine.

41.     An FBI Special Agent who has personally met Randy Craig Levine has reviewed the photograph of Levine attached as Exhibit G and confirmed the person in the photograph is Levine.

42.    Levine was arrested May 2, 1991, by the Tampa International Airport Police Department for possession of steroids.  Levine was fingerprinted pursuant to this arrest.  Copies of Levine's fingerprints are attached as Exhibit H.

43.    This affidavit is sworn to before a United States Magistrate Judge of the United States District Court, Southern District of Florida, who is a person duly empowered to administer an oath for this purpose.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

WILLIAM L. DONALDSON
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


Sworn and Attested to me by Applicant by Telephone (FaceTime) per the requirements of Fed. R. Crim. P. 4(d) and 4.1 on the 17 day of July, 2020.

THE HONORABLE WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT G

## Photograph



# EXHIBIT H

**Fingerprints**

